**UNITED STATES v. HOLLY**
(two cases).

**UNITED STATES v. SAUNDERS.**
Nos. 4262–4264.

United States Court of Appeals
Tenth Circuit.

Oct. 31, 1951.

222

David B. Bliss, Attorney, Department of Justice, Washington, D. C. (Holmes Baldridge, Asst. Atty. Gen., Whit Y. Mauzy, U. S. Atty., Tulsa, Okl. and M. M. Heuser, Atty., Department of Justice, Washington, D. C., on the brief), for appellant.

Harry M. Crowe, Jr., Tulsa, Okl., for appellees.

Before PHILLIPS, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

The plaintiffs brought these separate actions under the Federal Tort Claims Act [1] to recover damages for injuries sustained when an automobile driven by C. B. Holly was struck by a jeep owned by the United States and driven by Emil H. Maness, a member of the Oklahoma National Guard. The cases were consolidated for trial. At the time of the accident Maness was employed as a "unit caretaker" assigned to Company F of the 279th Infantry, 45th Division, Oklahoma National Guard. The court found that the injuries to the plaintiffs were caused by the negligence of Maness in the performance of his duties as a caretaker of United States property and entered judgment for each of the plaintiffs. The United States has appealed.

The United States does not question the sufficiency of the evidence to sustain the findings that Maness was negligent and at the time was engaged in the performance of his duty as a caretaker of United States property assigned to the Oklahoma National Guard. It submits only the question of whether Maness was an employee of the United States within the meaning of the Federal Tort Claims Act. We think this question must be answered in the affirmative. 32 U.S.C.A. § 42 authorizes the employment of caretakers for the care and maintenance of matériel, animals, armament and equipment belonging to the United States and assigned to National Guard organizations. The compensation for these services is paid from funds allotted by the Secretary of the Army for the support of the National Guard under such regulations as the Secretary of the Army may prescribe. The compensation paid to caretakers who belong to the National Guard is in addition to any pay authorized for the members of the National Guard. 32 U.S.C.A. § 42a provides for the use of help employed as caretakers for duties other than that of caretaker "if such additional services do not interfere with the complete performance of the duties for which they are employed".

National Guard regulations No. 75–16, dated December 29, 1947, as amended April 16, 1948, promulgated by the Secretary of the Army, delegate to the several Adjutants General of the States authority to employ, fix rates of pay, establish duties and to discharge caretakers subject to instructions issued by the Chief, National Guard Bureau.[2] Travel of caretakers essential to proper performance of their official duties is authorized.[3] Maximum pay scale is fixed by

---

1. The Federal Tort Claims Act provisions now appear in 28 U.S.C.A. §§ 1291, 1346 (b), 1402, 1504, 2110, 2401, 2402, 2411, 2412 and 2671–2680.

2. "1. Authority. Accounting clerks and caretakers referred to in these regulations are employees authorized under the provisions of section 90, National Defense Act, for the administration and care of matériel armament, vehicles, and equipment provided for the National Guard and used solely for military purposes. The Secretary of the Army has delegated to the several adjutants general of States, Territories, and the District of Columbia, authority to employ, fix rates of pay, establish duties and work hours (not to exceed 40 hours per week), and to discharge employees within the purview of this regulation; subject to the provisions of law and such instructions as may from time to time be issued by the Chief, National Guard Bureau."

"4. b. (1) Unit caretakers must be members of the National Guard and of the unit for which employed. They must be qualified to perform maintenance, at the organizational level on the equipment for which the unit commander will be responsible. Such qualifications will be determined by appropriate aptitude tests."

3. "5. Travel—Travel of accounting and caretaker personnel, essential to proper performance of their official duties, is authorized. Pertinent instructions will issue from the Chief, National Guard Bureau."

the Chief, National Guard Bureau, but the Adjutants General are authorized to fix the actual pay within that maximum. Compensation for overtime work may not be paid from Federal funds.[4] Payment is made on standard forms provided for by the United States.[5] The regulations provide in detail the right of caretakers to annual leave, sick leave and military leave including accumulation of annual and sick leave.[6]

Thus the Federal statute creates the position of unit caretaker and generally outlines the duties. The pay for these services is wholly from Federal funds. The regulations define the duties and responsibilities in detail. The maximum pay scales are fixed by the Secretary of the Army, while actual rates of pay, within the limits fixed by regulation, are established by the State Adjutant General by virtue of the delegation of that power from the Secretary of the Army. The primary duties of the caretakers are the care and maintenance of Federal property assigned to the National Guard for military purposes. Through the State Adjutant General, the Secretary of the Army and the Chief of the National Guard Bureau have complete control over the work of the caretaker, including his employment and discharge. The federal government maintains a reasonable measure of direction and control over the method and means of a caretaker's performing his service. There is present every element necessary to constitute a unit caretaker an employee of the United States.[7] The fact that under the regulations the caretaker must be a member of the National Guard and perform duties for the state is immaterial. The injuries were caused while the caretaker was in the performance of his duties for the United States, not the state.

The United States apparently is of the view that our decision in Williams v.

---

4. "6. Rates of pay.—The maximum pay scale for accounting clerks and caretakers will be announced periodically by the Chief, National Guard Bureau. Actual rates of pay will be fixed by the several adjutants general within the limitations prescribed. Total payment from Federal funds will not exceed the allotment for that purpose, but supplemental payments may be made from other sources. No compensation will be paid from Federal funds for overtime work performed by accounting clerks and caretakers. Salaries paid to employees who are members of the National Guard will be in addition to any compensation authorized by law for members of the National Guard."

5. "7. Payment.—a. Caretakers and accounting clerks will be paid monthly or semimonthly on Standard Form 1128 by the finance officer designated to pay National Guard vouchers for the State concerned."

6. "12. Leave.—State adjutants general are authorized to grant accounting employees and caretakers annual leave, sick leave, and military leave (all with pay) in accordance with the provisions of a, b, c, and d, below. They will maintain a record of all absences from official duty, the duration of each absence, and its cause.

"a. Annual leave.—Employees are entitled to 15 days annual leave with pay each calendar year. Annual leave is credited to the employee's leave account at the rate of 5 hours per day period for employees paid bimonthly and 10 hours per pay period for employees paid monthly. (1) The minimum credit of annual leave is 5 hours and additional credits are in multiples of 5 hours. (2) Annual leave may be accumulated up to 30 days.

"b. Sick leave.—Employees accrue sick leave at the rate of 1¼ days per month. The monthly accrual of sick leave will be credited to the employee's leave account at the beginning of the calendar month. (1) The minimum credit of sick leave is 5 hours and additional credits are in multiples of 5 hours. (2) Sick leave may be accumulated up to 15 days.

"c. Military leave.—Military leave not to exceed 15 days will be granted to accounting clerks, who are also members of the National Guard, and to caretakers, for the purpose of attending annual field training of the units to which they are assigned. Such leave will be granted without prejudice to their pay as accounting clerks and caretakers of their pay as members of the National Guard. In this respect their status will correspond to that of Federal employees who are also members of the National Guard."

7. Singer Manufacturing Co. v. Rahn, 132 U.S. 518, 10 S.Ct. 175, 33 L.Ed. 440; United States v. Wholesale Oil Co., Inc., 10 Cir., 154 F.2d 745; Jones v. Goodson, 10 Cir., 121 F.2d 176.

United States, 10 Cir., 189 F.2d 607, controls here. The holding in that case was that members of a unit of the National Guard which had not been ordered into active service of the United States were in the service of the state and not of the United States and were not employees of the United States within the meaning of the Federal Tort Claims Act. The complaint in the Williams case alleged that the injuries were caused by the negligence of a member of the National Guard "while acting within the scope of his employment as a member of the National Guard of Oklahoma." If, at the time of the accident, Maness had been acting within the scope of his service as a member of the National Guard of Oklahoma, there could be no recovery from the United States, but he was acting in the course of his employment as a caretaker of United States property as contemplated by the foregoing statutes and regulations, not the National Guard.

Judgment in each case is affirmed.