## ELMO v. UNITED STATES.

### No. 13912.

**United States Court of Appeals Fifth Circuit.**

**June 5, 1952.**

———————◇———————

Ernest L. Sample, Beaumont, Tex., for appellant.

Leonard E. Choate, Asst. U. S. Atty., Beaumont, Tex., Warren G. Moore, U. S. Atty., Tyler, Tex., for appellee.

Before HUTCHESON, Chief Judge, and BORAH, and RUSSELL, Circuit Judges.

BORAH, Circuit Judge.

Gracie Elmo brought this action against the United States under the Federal Tort Claims Act[1] to recover damages for injuries received when she was struck by a jeep owned by the United States and driven by Sergeant Arthur Lejeune, a member of the Texas National Guard. On the day in question Lejeune was supply sergeant of Company C, 111th Engineer Combat Battalion, 36th Division, Texas National Guard but what is here important is the fact that he was also employed as a caretaker of government property assigned to this unit. And, as is alleged in the complaint, it was in his capacity as caretaker, and it was while acting within the scope of his employment as a federal employee, and while driving a jeep on business for the government that he committed the acts of negligence that furnish the basis for this complaint.

The United States filed a motion to dismiss for lack of jurisdiction over the subject matter on the ground that Lejeune was not an employee of the United States within the meaning of the Federal Tort Claims Act. The motion was submitted on stipulated facts, supplemented by affidavits and the deposition of Lejeune. It was expressly stipulated (1) that on the date of the accident Company C was a federally recognized National Guard Unit and was not then in the active military service of the United States; and (2), that at the time of the accident Lejeune was acting within the scope of his employment as unit caretaker, Company C.

The trial court sustained the motion to dismiss for lack of jurisdiction over the subject matter, and Gracie Elmo has appealed.

The Federal Tort Claims Act, Title 28, United States Code, Section 1346(b) provides that the district courts shall have jurisdiction of civil actions on claims against the United States for personal injuries caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment. The language of this section of the statute clearly reveals that the employer-employee

1. 28 U.S.C. §§ 1291, 1346(b), 1402, 1504, 2110, 2401, 2402, 2411, 2412, and 2671–2680.

relationship between the active tort feasor and the United States must exist or the district court is without jurisdiction.

In Dover v. United States, 5 Cir., 192 F.2d 431, this court held that a member of a state National Guard unit, which had not been called into the active federal military service, was in the service of the state and was not an employee of the United States merely by virtue of his membership in the National Guard. We adhere to our former opinion but recognize that it is not here controlling. In the instant case, Lejeune was a supply sergeant of Company C, 111th Engineer Combat Battalion of the Texas National Guard and since Company C had not been ordered into the active service of the United States his membership therein did not in and of itself make him an employee of the United States. But Lejeune was not just a member of the National Guard, he was also employed as a civilian unit caretaker of Company C. Therefore, the basic question presented by this appeal is whether one employed as caretaker of United States Government property assigned to a state National Guard unit is an employee of the United States within the meaning of the Federal Tort Claims Act. From our examination of the applicable statutes and regulations, we think the question must be answered in the affirmative.

The applicable statute governing the employment of caretakers, Title 32, United States Code Annotated § 42, provides that funds allotted by the Secretary of the Army for the support of the National Guard shall be available for the compensation of competent help for the care of material, animals, armament, and equipment of organizations of all kinds, under such regulations as the Secretary may prescribe. However, these funds are only available for the hire of caretakers, "Provided, That the Secretary of the Army shall, by regulations, fix the salaries of all caretakers and clerks hereby authorized to be employed and shall also designate by whom they shall be employed." By the terms of the statute either enlisted men or civilians may be employed as caretakers but if there are as many as two caretakers in any unit, one of them must be an enlisted member of the National Guard. The compensation paid to caretakers, who are also members of the National Guard, is in addition to any pay authorized for members of the Guard. And section 42a of Title 32 provides that caretakers may also perform clerical duties incidental to their employment and that nothing contained in the Act shall be construed to prevent the utilization of the services of caretakers on duties other than those indicated, if such additional services do not interfere with the complete performance of the duties for which they are employed under the provisions of the statute.

National Guard Regulation 75–16, dated December 29, 1947, as amended April 16, 1948, states that caretakers are employees authorized under the provisions of section 90, National Defense Act, for the administration and care of material, armament, vehicles, and equipment provided for the National Guard. This regulation, which was promulgated by the Secretary of the Army, delegates to the several adjutants general of States, Territories and the District of Columbia authority to employ, to fix rates of pay, to establish duties and to discharge caretakers, subject to such instructions as may be issued by the Chief, National Guard Bureau. This regulation further provides that unit caretakers must be members of the National Guard and must be qualified to perform maintenance on equipment at the organizational level and that his qualifications so to perform are to be determined by appropriate aptitude tests. Travel of caretakers essential to the proper performance of their official duties is authorized and their maximum pay scale is fixed by the Chief, National Guard Bureau. However, the several adjutants general are authorized to fix the actual rates of pay within the maximum rate prescribed,[2] just as they are authorized to fix the work hours of caretakers. However, it is specifically provided that

---

2. The United States paid Lejeune at the rate of $2,400 per annum for his services as unit caretaker.

work hours are not to exceed 40 hours per week and no compensation for overtime work performed by caretakers is to be paid from funds appropriated by the Federal government. Payment of caretakers and accounting clerks is made on standard forms provided by the United States and the adjutants general are authorized to grant caretakers annual leave, sick leave, and military leave. The military leave is granted for the purpose of permitting caretakers to attend annual field training of their units and while on such leave their status corresponds to that of ordinary Federal employees who are also members of the National Guard.

National Guard Bureau Circular No. 4, dated 23 January 1950, provides that unit caretakers will work directly under the supervision of the unit commander and are responsible, except during field training periods, for the receipt, care, maintenance, and repair of unit equipment. It is also specified that during the absence of supply personnel they are to perform such clerical and stock handling duties as are necessary to receive T/O&E equipment for the unit, and, to the extent that there will be no interference with the accomplishment of their primary missions, they may be required to construct training aids, and instruct, supervise and assist unit personnel in the accomplishment of maintenance on equipment.

Under the provisions of the Act of June 20, 1949, Public Law 108, 81st Congress, 34 U.S.C.A. § 855c–1, members of the federally recognized National Guard of the several states, who suffer disability or death in line of duty, are entitled to the same pensions, compensation, death gratuity, retirement pay, hospital benefits, and pay and allowances as are provided by law for officers and enlisted men of the Regular Army. However, National Guard Regulation No. 28, dated 1 August 1950, promulgated by order of the Secretary of the Army, states that members of the National Guard who are employed as caretakers are not covered by the Act of June 20, 1949, during the normal discharge of their duties as civilian employees, but they are covered during the scope of their civilian employment by the provisions of the United States Employees' Compensation Act of September 7, 1916, as amended.

The question here presented is not *res nova*. In United States v. Holly, 192 F. 2d 221, 223, the United States Court of Appeals for the Tenth Circuit, in a carefully considered opinion, held that a unit caretaker, engaged in the performance of his duty as a caretaker of United States government property assigned to the Oklahoma National Guard, was an employee of the United States. In reaching this conclusion the court said:

"Thus the Federal statute creates the position of unit caretaker and generally outlines the duties. The pay for these services is wholly from Federal funds. The regulations define the duties and responsibilities in detail. The maximum pay scales are fixed by the Secretary of the Army, while actual rates of pay, within the limits fixed by regulation, are established by the State Adjutant General by virtue of the delegation of that power from the Secretary of the Army. The primary duties of the caretakers are the care and maintenance of Federal property assigned to the National Guard for military purposes. Through the State Adjutant General, the Secretary of the Army and the Chief of the National Guard Bureau have complete control over the work of the caretaker, including his employment and discharge. The federal government maintains a reasonable measure of direction and control over the method and means of a caretaker's performing his service. There is present every element necessary to constitute a unit caretaker an employee of the United States. The fact that under the regulations the caretaker must be a member of the National Guard and perform duties for the state is immaterial."

We agree with this analysis and hold that, in so far as Lejeune performed services for the United States in his position of unit caretaker, he was a civilian employee of the United States within the meaning of the Federal Tort Claims Act.

As to appellant's contention that the Court of Appeals for the Tenth Circuit in deciding the Holly case overlooked certain Constitutional limitations on the power of Congress, we think there is nothing in the Constitution inhibiting Congress from authorizing the hiring of a civilian employee to look after property belonging to the United States, assigned to a state National Guard unit.

Since it is here stipulated that at the time of the accident Lejeune was acting within the course of his employment as unit caretaker of United States property, it follows that the United States was liable for his acts and the judgment of the court below dismissing the action for want of jurisdiction must be and the same hereby is reversed.

[1]. 28 U.S.C. §§ 1291, 1346(b), 1402, 1504, 2110, 2401, 2402, 2411, 2412, and 2671–2680.