**Clara C. LEARY and Worcester Mutual Fire Insurance Company**

v.

**UNITED STATES of America.**

**Katherine T. GOULDING and Aetna Casualty and Surety Company**

v.

**UNITED STATES of America.**

**Eliza C. KAVANAGH, Louise B. Burke and Fireman's Fund Insurance Company**

v.

**UNITED STATES of America.**

**Verner NELSON, Beatrice Nelson and Cambridge Mutual Fire Insurance Company**

v.

**UNITED STATES of America.**

**Joseph E. HANNIGAN, Gertrude M. Hannigan, Flora M. Hannigan, Eleanor A. Hannigan, Lowell Mutual Fire Insurance Company and Travelers Indemnity Company**

v.

**UNITED STATES of America.**

**Robert E. KANE, Mary Kane, Guarantee Mutual Insurance Company and Travelers Indemnity Company**

v.

**UNITED STATES of America.**

Civ. A. Nos. 2031–2036.

United States District Court
D. New Hampshire.
March 31, 1960.

McLane, Carleton, Graf, Greene & Brown, Stanley M. Brown, Manchester, N. H., for plaintiffs.

Maurice P. Bois, U. S. Atty., Concord, N. H., for defendant.

CONNOR, District Judge.

The complaints in the above-entitled cases were brought against the United States, under the Federal Tort Claims Act, Title 28 U.S.C. § 1346(b), for damages resulting from the crash of a T–33 jet trainer owned by the United States and loaned to the New Hampshire Air National Guard. Count I alleges in substance that the United States, through its employees acting within the scope of their employment, failed to use due care to inspect, repair and maintain the aircraft, allowed an inexperienced pilot to fly the aircraft, and flew the aircraft in a negligent manner in violation of federal and state aeronautics laws. Count II alleges violations of Articles III, V, and XIV of the United States Constitution.

The defendant moved to dismiss chiefly on the ground that the aircraft was under the exclusive control of the New Hampshire Air National Guard and the United States had not furnished any maintenance, supplies or equipment to the aircraft.

At the hearing on the motion to dismiss, it appeared that the T–33 jet trainer was owned by the United States, but at the time of the crash was on loan to the New Hampshire Air National Guard. Some of the personnel of the New Hampshire Air National Guard were technicians employed under the provisions of Title 32 U.S.C. § 709, and were paid by the United States. At times, routine

overhaul was done on the aircraft by a civilian contractor who was paid by the United States, and such an overhaul was done approximately one hundred air hours before the crash.

The crash occurred when the aircraft was flown over Worcester, Massachusetts, on a training flight in conjunction with the New York National Guard. The aircraft was testing the Air Defense Warning and Control facilities of the United States. The flight was authorized by the National Guard Bureau, a federal agency, but neither the New Hampshire Air National Guard nor the pilot, a lieutenant in the New Hampshire Air National Guard, was on active federal duty. No United States Air Force personnel had authority over the New Hampshire Air National Guard.

The plaintiff contends that the flight which resulted in the crash was in violation of provisions of the Federal Civil Aeronautics Act and regulations of the Massachusetts and New Hampshire aeronautics laws.

The Federal Civil Aeronautics Act, Title 49 U.S.C.A. § 401(26), which was in effect at the time of the crash provided:

> "Any person who causes or authorizes the operation of aircraft, whether with or without the right of legal control (in the capacity of owner, lessee, or otherwise) of the aircraft, shall be deemed to be engaged in the operation of aircraft within the meaning of this chapter."

Title 49 U.S.C.A. § 560(a)(5) also provided:

> "It shall be unlawful * * * [f]or any person to operate aircraft in air commerce in violation of any other rule, regulation, or certificate of the Board or Administrator of Civil Aeronautics under this subchapter."

The New Hampshire and Massachusetts aeronautics laws are identical with the Federal Act in all material aspects. See N.H. RSA 422:3:XXIII, 422:34:-VIII, Mass.Stat.Ann. 90:35(j), 90:44.

Plaintiff contends that, under the law of New Hampshire, the statutes cited place responsibility on the owner of the aircraft, even though he be without control, for the conduct of one to whom he entrusts the plane, regardless of whether the pilot was an employee of the owner.

It is true that in Federal Tort Claims actions state law controls on questions of negligence and the nature and the extent of recovery. Olson v. United States, 8 Cir., 1949, 175 F.2d 510. It is also true that the New Hampshire Supreme Court in Hoebee v. Howe, 1953, 98 N.H. 168, 97 A.2d 223, decided that a causal violation of either the federal or state Aeronautics Acts renders the owner liable for the negligence of the pilot, even though the pilot is not the agent or employee of the owner.

However, recovery in this case must be in accordance with the express terms of the Federal Tort Claims Act. That Act requires negligence on the part of an employee of the United States. Thus state law must yield to the specific requirement that an employee of the United States must have been acting negligently.

Several cases have held that in similar situations a state law imposing liability whether or not an employee status exists does not make the United States liable under the Tort Claims Act. In Mott v. United States, an unreported decision of this Court (Civil Action No. 1779, decided January 14, 1960), it was held that a state law imposing liability on an independent contractor for a non-delegable duty is not binding on the United States under the Tort Claims Act.

The Supreme Court of the United States in Dalehite v. United States, 1953, 346 U.S. 15, 44, 73 S.Ct. 956, 966, 97 L.Ed. 1427, faced a similar problem, whether or not the United States, by virtue of its ownership of an inherently dangerous commodity or engaging in an extrahazardous activity, might be found absolutely liable even though there was

no neglect or wrongful act or omission on the part of an employee. The Court held there was no such liability; the Tort Claims Act requires a "negligent or wrongful act." It seems equally logical that there must also be an "act of an employee" of the United States. Thus it is apparent that the federal and state aeronautics laws do not expand the liability of the United States beyond the express provisions of the Tort Claims Act.

The plaintiff contends that in Curtis v. United States, D.C.N.D.N.Y.1953, 117 F. Supp. 912, 913, the Court indicated that if, under the applicable state law, the owner is responsible for the operation of his plane, the United States would have been liable for damage caused by its plane while operated by a National Guardsman. The state law referred to in that case is a presumption that the plane was operated by the servant of the owner in the course of the servant's employment. Whether such a rule would operate within the framework of the Tort Claims Act need not be decided; in any event, the state law sought to be invoked in this case is beyond the express intent of the Tort Claims Act. The state law, if applied in this case, might impose liability on the owner not only for the act of an employee, but also for that of a licensee, bailee and lessee.

Other cases have held that the Tort Claims Act requires a negligent or wrongful act or omission on the part of an employee and in the absence of such an act, have not imposed liability on the United States, even though a private person would be liable according to the law of the state. In Hopson v. United States, D.C.Ark.1956, 136 F.Supp. 804, the Court held that both a negligent act and an act of an employee are necessary.

That the Hoebee case, supra, is inapplicable is clear from the case of United States v. Taylor, 6 Cir., 1956, 236 F.2d 649, 653, certiorari granted 352 U.S. 963, 77 S.Ct. 364, 1 L.Ed.2d 320, dismissed per stipulation 355 U.S. 801, 78 S.Ct. 6, 2 L.Ed.2d 19. There the Court unequivocally stated at page 653 of 236 F.2d:

"[The Federal Tort Claims Act] makes clear that the United States has consented to be sued only where a private person would be liable under the *respondeat superior* doctrine. Reference must be had to the law of the state for the applicable law as to liability under that doctrine, but state law imposing liability regardless of whether the agent or servant was acting within the scope of his employment, or absolute liability under any circumstances, is inapplicable and irrelevant. The statute itself leaves little room for question on this issue, and any doubt that may have remained has been dispelled by decisions of the courts. Dalehite v. United States, 1953, 346 U.S. 15, 44–45, 73 S.Ct. 956, 97 L.Ed. 1427. * * *"

Also at issue is whether the pilot, an Air National Guard lieutenant, was an employee of the United States acting within the scope of his employment. He was not on active duty for the United States and, although the flight may have been in some way related to the national defense, the United States Air Force had no control over the flight. The pilot was controlled by and acted under orders from the New Hampshire Air National Guard.

Although he may have been paid with federal funds, it is not clear that all members of the National Guard are not paid from federal funds. See Courtney v. United States, 2 Cir., 1956, 230 F.2d 112, 57 A.L.R.2d 1444.

The decisions are unanimous in supporting the conclusion that a member of a non-activated National Guard is not a federal employee. Cosme v. United States, Cir. No. 5555 (Puerto Rico 1950, unreported); Dover v. United States, 5 Cir., 1951, 192 F.2d 431; Williams v. United States, 10 Cir., 1951, 189 F.2d 607; McCranie v. United States, 5 Cir., 1952, 199 F.2d 581; United States v. Prager, 5 Cir., 1958, 251 F.2d 266; Storer Broadcasting Company v. United States, 5 Cir., 1958, 251 F.2d 268; Mac-

kay v. United States, D.C.Conn.1949, 88 F.Supp. 696; Larkin v. United States, D.C.N.Y.1952, 118 F.Supp. 435; Satcher v. United States, D.C.S.C.1952, 101 F.Supp. 919; Glasgow v. United States, D.C.Ala.1951, 95 F.Supp. 213. This case requires no different conclusion even though the flight which resulted in the crash may have had certain federal aspects. The word "employee" in the Tort Claims Act has no mystical or tergiverse meaning. The United States had no right to control the pilot's manner of flight. It is more in accord with the realities of military life to adopt the view that each serviceman is responsible, generaly speaking, only to his superior in the chain of command. To say that an airman is sometimes an employee of the United States and sometimes of the National Guard and sometimes possibly an employee of both is to invite conflicting loyalties and shifting responsibilities. If the pilot in this case performed maneuvers and acrobatics involving an unreasonable risk of harm as the complaint alleged, the more easily the responsibility can be located, the more readily will the conduct be corrected. For the foregoing reasons, it is concluded that neither the pilot nor his companion in this case were employees of the United States.

A further issue is whether technicians appointed under Title 32 U.S.C. § 709 (1959) to care for and maintain federally owned aircraft loaned to the National Guard, are "employees" of the United States. Apparently all of the cases on the subject have held that they are. See Courtney v. United States, 2 Cir., 1956, 230 F.2d 112, 57 A.L.R.2d 1444; United States v. Holly, 10 Cir., 1951, 192 F.2d 221; Elmo v. United States, 5 Cir., 1952, 197 F.2d 230; United States v. Duncan, 5 Cir., 1952, 197 F.2d 233. It should be noted that in this case we are dealing with "caretakers" apparently appointed according to regulations issued by the Secretary of the Air Force. The cited cases deal with regulations issued by the Secretary of the Army, but there is no suggestion as to what the Secretary of the Air Force's regulations are.

I am of the view that the position of Judge Lumbard in the Courtney case is more realistic, in spite of the decisions to the contrary, and I agree with his conclusions.

But in the present case, there is no evidence concerning the status of the technicians who allegedly worked on the aircraft. It would seem that there is a great difference between a caretaker employed to drive a truck and a highly skilled and highly trained technician employed to make intricate adjustments on advanced types of jet aircraft. If the latter were involved, much depends on who actually investigated the person's qualifications and who actually hired him. If he was such a highly skilled technician and was originally located by the United States and followed the jet wherever it went, he may well be an employee of the United States, but in the absence of any evidence on this motion, the government has failed to prove that the technicians were not employees of the United States and the question should be reserved for trial.

There is a suggestion to the effect that a civilian contractor not employed by the National Guard overhauled the aircraft within one hundred flying hours of the crash. In the absence of further evidence as to his status, the question whether he was an employee of the United States is reserved for trial.

The allegations in Count II merit but scant consideration in that they are entirely irrelevant to the facts or the issues in this proceeding. This court should not be called upon to deal with frivolous or inappropriate contentions. It is concluded that Count II of the complaint should be and hereby is dismissed.

Partial summary judgment is granted as to Count I, in accordance with this opinion; the question whether the technicians, caretakers or the civilian contractor were employees of the United States is reserved for trial on the merits.