Margaret **LAYNE**, Executrix of the Estate of William J. Layne, Deceased, Plaintiff,

v.

**UNITED STATES of America,** Defendant.

No. IP 60–C–82.

United States District Court
S. D. Indiana,
Indianapolis Division.

Feb. 2, 1961.

Hollowell & Hamill by Ralph Hamill and by John P. Price, Indianapolis, Ind., for plaintiff.

Don A. Tabbert, U. S. Dist. Atty., by John C. Vandivier, Jr., and by Philip R. Melangton, Jr., Indianapolis, Ind., for defendant.

HOLDER, District Judge.

The defendant's Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., presents the issues.[1] The defendant offered affidavits and exhibits in support of the Motion and the plaintiff offered an affidavit, stipulations of the parties, and exhibits in opposition to the Motion.

The plaintiff, administratrix of the estate of William J. Layne, deceased, brings this action based on the Federal Tort Claims Act, 28 U.S.C.A. 2671 et seq.[2] She alleges that the United States of America is liable in damages to the

---

1. "Motion For Summary Judgment

" * * *, defendant herein moves the Court for summary judgment in its favor for the reason that plaintiff's decedent, William J. Layne, died from a service-connected disability incurred in the active air service of the United States in peacetime, for which the plaintiff is being compensated pursuant to the provisions of the Veterans' Benefits Act (Sections 101, et seq., Title 38, United States Code), which, in accordance with judicial precedent in such cases, precludes additional or further recovery by the plaintiff under the Federal Tort Claims Act for the same service-connected disability and death. * * *."

2. "Complaint For Damages

"3. * * *. That on the 2nd day of July, 1959, William J. Layne, deceased, was the pilot of a certain airplane, to-wit: F–84–F jet fighter, at Hulman Field, Terre Haute, Indiana.

"4. That at all times mentioned herein, the duty of operation, management and control of the control tower at said Hulman Field, Terre Haute, Indiana, and the duty of supervising, operating and providing for air navigational traffic and safety for persons rightfully using the airplanes and facilities, both civilian and military, at said Hulman Field, Terre Haute, Indiana, and in particular said William J. Layne, deceased, had been en-

estate for the use and benefit of certain dependent survivors of Major William J. Layne; that he was injured and died while in a training flight as a member of the Indiana Air National Guard which was proximately caused by the alleged negligent conduct of defendant's civilian employees in the operation of an air traffic control tower at Hulman Field, Terre Haute, Vigo County, Indiana.

The defendant's amended answer consists of five (5) defenses, the first (1st) and fifth (5th) of which are material to this Motion.[3] The first (1st) defense

trusted to and assumed by said Defendant, and said Defendant had agreed to and did undertake said duties.

"5. That at all times mentioned herein the control tower at said Hulman Field, Terre Haute, Indiana, and all of the facilities, safety devices, and instruments, including a certain safety barrier, which were operable from said control tower, were in the exclusive custody, control and possession of the Defendant, by and through its agents, servants and employees. That at all times mentioned herein, said agents, servants and employees of the Defendant were acting within the scope of their employment with said Defendant.

"6. * * *. That said safety barrier was installed at the end of the runway at said Hulman Field as a safety device, for the protection and preservation of life and property, in such a manner that aircraft, which had experienced mechanical or operational failures on take-off attempts could be caught with said safety barrier and brought to a safe stop before crashing. That at all times mentioned herein, said safety barrier was capable of performing said functions and of bringing any such aircraft to a safe stop. That said Defendant agreed and covenanted to operate and raise said safety barrier when requested and ordered to do so by pilots using said facilities at Hulman Field, Terre Haute, Indiana, including said William J. Layne, deceased.

"7. That on the 2nd day of July, 1959, and at approximately 5:45 P.M. on said date, said William J. Layne, deceased, attempted to take off from said runway at said Hulman Field, Terre Haute, Indiana, in the aforesaid airplane. That at said time and place and as said deceased was attempting the take-off, as aforesaid, said airplane sustained a blow-out to one of the tires, thereby causing said deceased to lose control of said airplane. That at said time, said deceased immediately requested and ordered that said safety barrier be raised and sent an urgent appeal and order by radio to the agents, servants and employees of said Defendant in said control tower, for emergency aid, and specifically requesting the raising, use and operation of said safety barrier. That said Defendant, well knowing of the perilous situation of said William J. Layne, deceased, and after having received said urgent appeal, request and order for use and operation of said safety barrier, negligently failed and refused to use or raise said safety barrier. That as a direct and proximate result of the negligence of the Defendant, the airplane which said William J. Layne, deceased, was then operating crashed and burst into flame, thereby causing the death of said William J. Layne, to Plaintiff's great damage.

"* * * * * * *

"8. * * *.

"9. * * *. That said William J. Layne departed this life, leaving his widow and two (2) minor sons, William Dean Layne and Jerry Lee Layne, surviving him, which widow and minor sons were wholly dependent on said deceased for support. That as a direct and proximate result of the negligence of the Defendant, the Plaintiff has been damaged in the sum of Five Hundred Ninety-Five Thousand ($595,000.00) Dollars. * * *."

3. "Amended Answer

"Defendant, United States of America, * * *:

"First: * * *.

"Second: Admits the allegations contained in paragraph numbered '3' of the complaint.

"Third: Denies each and every allegation contained in paragraphs numbered '4', '5', '6', '7', * * *, and '9' of the complaint.

"* * * * * * *

"As And For A Fifth Separate And Complete Defense

"Plaintiff herein has previously made application to this defendant for dependency and indemnity compensation as the result of the death of her husband in this accident, and such compensation for service-connected injury and death has been awarded and paid to her pursuant to the provisions of the Servicemen's and Veteran's Benefit Act, 38 U.S.C. 301, et seq. The compensatory relief thus already provided plaintiff pursuant to statutory enactment precludes her further recovery in this action under the Tort Claims Act."

admits and denies pertinent allegations of the complaint. The fifth (5th) defense alleges that the dependent survivors sought and obtained an award from defendant for dependency and indemnity compensation under the provisions of Title 38 U.S.C.A. § 301 (The Servicemen's and Veteran's Benefit Act).

There is no genuine issue as to any material fact. Major Layne at all times in question was a member of and in the active service of the Indiana Air National Guard, assigned to the 113th Tactical Fighter Squadron based at Hulman Field, Vigo County, Terre Haute, Indiana. The Indiana Air National Guard and Major Layne at all times in question had met all the requirements for and were recognized by the United States of America as a part of the reserve components of its military establishment in a classification of "Inactive Service". Major Layne at the time in question was on a duty training flight. During the take-off, he met with an accident and subsequently died as a result of injuries incurred in the accident. Surviving dependents of Major Layne sought, were awarded, and received death pension and other benefits from the United States of America as authorized by Title 38 U.S.CA. § 101(24) as a result of such happening in the course of such military service.

The Federal Tort Claims Act, Title 28 U.S.C.A. § 2671 et seq., makes the United States of America liable for money damages for death caused by the negligent act or omission of any of its employees while they are acting within the scope of their office or employment or in the case of the military in line of duty under circumstances where the United States of America, if a private person, would be liable to such claimant under the law of the place the negligence occurred. The Act is compensatory in nature and is in no way punitive. Jurisdiction to hear such claims, pursuant to the Federal Tort Claims Act, is extended by authority of Title 28 U.S.C.A. § 1346(b).

The United States Supreme Court has held that a member of the armed forces of the United States of America performing on active duty cannot maintain an action against the United States of America under the Federal Tort Claims Act. Feres v. United States of America, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152. No published decision is known to the Court involving a National Guardsmen's claim under such Act.

The authority for the existence of the Indiana National Guard is in the 1787 Constitution for the United States of America. It provides in Article 1, Section 8:

"The Congress shall have Power To * * * provide for the common Defence * * * of the United States; * * *;

"To provide for calling forth the Militia to execute the Laws of the Union, suppress Insurrections and repel Invasions;

"To provide for organizing, arming, and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and the Authority of training the Militia according to the discipline prescribed by Congress;

* * *; and

"To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof."

Implementing such Constitution for the United States of America are the Acts of Congress being Title 32 U.S.C.A. (The National Guard Act). This code demonstrates the relationship of the National Guard of Indiana and its members with the United States of America.

Further authority for its existence is in the amended 1851 Constitution of the

State of Indiana. It provides in Article 12:

"§ 1. Organization.—The Militia shall consist of all able-bodied male persons, betwen the ages of eighteen and forty-five years, except such as may be exempted by the laws of the United States, or of this state; and shall be organized, officered, armed, equipped, and trained, in such manner as may be provided by law.

"§ 2. Governor's Aids.—The Governor shall appoint the Adjutant, Quartermaster, and Commissary Generals.

"§ 3. All militia officers shall be commissioned by the Governor, and shall hold their offices not longer than six years.

"§ 4. Division of Militia.—The General Assembly shall determine the method of dividing the militia into divisions, brigades, regiments, battalions and companies, and fix the rank of all staff officers.

"§ 5. Sedentary and active.— The militia may be divided into classes of sedentary and active militia, in such manner as shall be prescribed by law. * * *"

Implementing the Constitution of the United States of America, Title 32 U.S.C.A. (The National Guard Act), and the Indiana Constitution is the Act of the Indiana General Assembly of 1953, Chapter 187 (Burns Indiana Statutes, §§ 45–1801 through 45–2805) known as the Indiana Military Code. This code demonstrates the relationship of the National Guard of Indiana and its members with the United States of America.

From the said Constitutions and the laws of the United States of America and the State of Indiana, it is clear that Major Layne had a dual legal relationship to the United States of America and to the State of Indiana at the times in question. Both Constitutions charge the National and State Government respectively with the power to create and maintain the Indiana National Guard and its personnel. The Indiana National Guard and its members may be what is termed in the active or inactive service of the respective National and State Governments. The fact that Major Layne and the Indiana Air National Guard at the time in question were in the service of the State, and such was termed "Active Service", does not mean that they had no active duty relationship or status with the United States of America even though such was termed "Inactive Service", they were in the service of the United States of America limited though it may be.

Major Layne was a commissioned officer who took an oath of office prescribed by both the national and state laws to support and defend the National Constitution against all enemies, foreign and domestic, bear true faith and allegiance to it, obey the orders of the President of the United States, and that he would well and faithfully discharge the duties of his office. Major Layne was at the time in question a part of the reserve components of the defendant's military establishment. Major Layne qualified for and received a regular pay allowance from the defendant under the said national laws. Title 31 U.S.C.A. § 698. Major Layne was qualified for and his surviving dependents received the pension and other benefits under said national laws. Title 38 U.S.C.A. § 101. With the foregoing factors and others prescribed in the said laws, it cannot be said that the term "Inactive Service" means that he was not in the service of the defendant at the time in question, even though he was at the time following the orders or command of the State of Indiana in his described dual relationship.

It was not the intention of the Congress of the United States of America to grant to a guardsman on inactive duty all of the benefits of a serviceman on active duty in the armed forces of the United States of America plus the rights of a civilian under the Federal Tort Claims Act. In view of the holding in the Feres case, supra, denying

a serviceman performing on active duty with the armed forces of the United States of America the right to recover damages under the Federal Tort Claims Act, if the foregoing intention of Congress were otherwise, it would place a guardsman in a better position than the serviceman on active duty. Congress recognized the guardsmen as being in the service of the United States of America as limited by said laws and provided for their well being by awarding and by appropriations for pay allowances, gratuities, and pensions.

Personnel in the military service are in an honored calling performing the highest duty to their country. Theirs is not that of the relationship of master and servant known in the civil law although some of the fundamentals of the two may be compared. Their service is within the meaning of the words "any employee" as used in the Federal Tort Claims Act. Major Layne was a commissioned officer and took an oath of office as herein explained.

Plaintiff vigorously contends that Major Layne was in the "Inactive Service" of the United States of America and while in such status was not an employee of the United States of America at the time in question and, therefore, Major Layne or his surviving dependents are entitled to the remedy of the Federal Tort Claims Act. Plaintiff cites the following authorities: Williams v. United States, 10 Cir., 1951, 189 F.2d 607; Dover v. United States, 5 Cir., 1951, 192 F.2d 431; McCranie v. United States, 5 Cir., 1952, 199 F.2d 581, certiorari denied 345 U.S. 922, 73 S.Ct. 780, 97 L.Ed. 1354; Mackay v. United States, D.C.Conn.1949, 88 F.Supp. 696; Glasgow v. United States, D.C.N.D.Ala.1951, 95 F.Supp. 213. These authorities do not decide whether or not a guardsman on active or inactive duty of the United States of America may use the remedy of the Federal Tort Claims Act. Generally, these cases involve an injured civilian seeking the Federal Tort Claims Act remedy against the United States of America for the negligence of a guardsman on inactive duty proximately causing such injuries. They hold in accordance with the master and servant rule of respondent superior that the United States of America under the facts of those cases is not responsible for the conduct of the alleged negligent guardsmen because they were under the command of a separate distinct master, the State, at the time of the happening and then and there executing such commands. Such authorities might be precedent for the law of the case if this action was by an injured civilian against the defendant for damages caused by the negligence of Major Layne in the operation of the plane. While the question of law in this case may be partially lurking in the records of the cited authorities, neither brought to the attention of those courts nor ruled upon, such do not constitute precedents to be followed. Webster v. Fall, 266 U.S. 507, 45 S.Ct. 148, 69 L.Ed. 411. These cases do not negate a guardsman's dual relationship.

We must keep in mind that in these cases the alleged master, United States of America, had done no wrong. Liability was sought to be fixed on the master for the wrongs of its alleged servant whom it did not control and which servant was not executing the orders of such master when the tort occurred. Even the states who were the masters of the guardsmen in question in those cases would not be obligated if the guardsmen's wrong was committed outside the scope of his employment with those states. It is possible, depending on the facts, for a guardsman to be performing several duties for both the State and the National Governments, the joint performance of which may be the proximate cause of an incident injuring another in which event both State and Nation would be liable, if immunity had been waived, or the performance of such for the State could be the proximate cause but the simultaneous performance of such for the Nation may not be the proximate cause, in which event the State

would be liable if immunity had been waived and the Nation would not be liable.

It is also apparent that a guardsman at a given time, despite his dual relationship, may be in exclusive service of the State. For example, when the State is utilizing the guard for purely State functions of maintaining the peace and tranquility of its citizens during riots, floods and disorders. A guardsman under such circumstances may not be performing in the line of duty for the Federal Government. However, there has been a chipping away of the doctrine of these cases because of the factual circumstances presented by unit caretakers and administrative assistants of non-activated National Guard Units, even though members of the guard, they have been held to be civilian employees of the United States within the meaning of the Tort Claims Act on the basis of direct federal control of their activities in such employment: United States v. Holly, 10 Cir., 192 F.2d 221; Elmo v. United States, 5 Cir., 197 F.2d 230; United States v. Wendt, 9 Cir., 242 F.2d 854; Watt v. United States, D.C., 123 F.Supp. 906. The case of Courtney v. United States, 2 Cir., 230 F.2d 112, 114, involved a unit caretaker conceded to be a federal employee although being hired by the state who controlled his rate of pay and hours of work. Judge Hinks, Second Circuit Judge, in speaking for the majority stated:

"Whether he was an 'employee of the government' is wholly a federal question based upon federal statutory interpretation. 28 U.S.C.A. §§ 1346(b), 2671. Consequently, his status under New York law is irrelevant. Moreover, we know of no rule of law that service to federal and state governments is incompatible or that one cannot be an 'employee' for some and not for other purposes."

In this case, Major Layne at the time in question was performing limited service of the United States of America in a military status even though he was also executing at the same time the commands of the State of Indiana; received pay from the United States of America for the training flight in question even though he was executing at the same time the commands of the State of Indiana; operated a jet plane of the United States of America and at the time in question had the direct duty to the United States of America to safeguard such plane even though he was executing at the same time the commands of the State of Indiana; and his dependent survivors received pensions and other benefits by reason of his death occurring in a service-connected accident even though he was executing at the same time the commands of the State of Indiana. Under the said laws, Major Layne was not in the same non-service status with the United States of America as that of a non-military private citizen of this country. The fact that the United States of America was not exercising its entire power of command or control of Major Layne at the time in question does not remove or destroy the performance of service for, and the status relationship the Major had with the United States of America, or it with the Major at the time in question. Nor does the fact that Major Layne's status is termed "Inactive Service" mean that he is not in or performing any service. The whole law must be read together to ascertain the meaning of such term which unerringly points to the service status of Major Layne and that in the line of duty, under these facts, was injured and became a casualty incident to such service with the United States of America.

Major Layne's accident occurred in the line of duty and incident to his service with the United States of America, therefor the holding in the case of Brooks v. United States of America, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200, cited by the plaintiff is not authority for this case. Feres v. United States of America, supra; Buer v. United States of America, 7 Cir., 241 F.2d 3, 64 A.L.R.2d 674.

A reading of the entire laws in question points to the meaning of "Inactive

Service" as actually being an active relationship between Major Layne and the United States of America as limited by his duties to the state at the time in question. For example: the plane which he was operating was the property of the defendant, Title 32 U.S.C.A. § 710(a); if the plane was damaged through the negligence of Major Layne, he would have been obligated to reimburse the defendant from his military service pay by reason of the provisions of Title 32 U.S.C.A. § 710 quoted in part with emphasis added:

"Section 710 Reports of survey

&ast; &ast; &ast; &ast; &ast; &ast;

(c) &ast; &ast; &ast;. However, if it was lost, damaged, or destroyed through negligence, the money value of the property or the damage thereto shall be charged &ast; &ast; &ast;; or (2) to the member to whom the loss, damage, or destruction is charged from *pay due him for duties performed in his status as a member of the National Guard.* &ast; &ast; &ast;."

The italicized portion of the quoted statute refer to the many duties placed upon Major Layne under the said laws as limited by his separate duties to the State of Indiana. "The pay due him," referred to in the italicized portion of the quoted statute, is the pay Major Layne received from the United States of America as compensation for his performance of said duties prescribed by the United States of America. It is unreasonable to suggest that the training of a jet aircraft pilot, such as Major Layne, or the use of the jet aircraft in question, would be useful to the accomplishment of any mission for the State of Indiana, but solely for the United States of America's military establishment. The training flight of Major Layne involved a distinct relationship with and performance of a duty to the United States of America.

■ Major Layne was in the performance of military service of the United States of America as limited by said laws at the time in question and is precluded from the remedies of the Federal Tort Claims Act. Feres v. United States of America, supra, Buer v. United States of America, supra.

This opinion is restricted to a consideration solely of the relationship of Major Layne to the Federal Government at the time of the training accident and any reference to other factual situations or circumstances have merely been hypothecated for this purpose and there has been no effort made to determine other relationships which Major Layne or any National Guardsmen for that matter might occupy at any given time.

The defendant is entitled to a judgment as a matter of law as the plaintiff has no cause of action under the Federal Tort Claims Act on the facts of this case. The Motion for Summary Judgment is sustained.