Janet M. HERREMAN et al.,
Plaintiffs-Appellants,

v.

UNITED STATES of America et al.,
Defendants-Appellees.

No. 72–1055.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 24, 1973.

Decided March 22, 1973.

Jack Aulik, Sun Prairie, Wis., for plaintiffs-appellants.

Harlington Wood, Jr., Morton Hollander, Robert M. Feinson, Dept. of Justice, Washington, D. C., David J. Cannon, U. S. Atty., Milwaukee, Wis., for defendants-appellees.

Before SWYGERT, Chief Judge, and STEVENS and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

The question is whether the widow of a National Guard officer killed while returning from a Florida fishing trip with the Adjutant General of the State of Wisconsin, as a non-paying passenger on a military aircraft, may sue the United States under the Federal Tort Claims Act.

Jerold F. Herreman was a Captain in the Wisconsin Army National Guard and the Army National Guard of the United States. On January 26, 1969, he joined Major General Ralph Olson, the Adjutant General of the State of Wisconsin, in Key West, Florida. The General and his wife were vacationing in Florida and had invited Captain Herreman to come down from Milwaukee to go fishing with the General. Intending to return home, on January 29, 1969, the Captain appeared at the Key West Naval Air Station, Florida, in military uniform and requested, on a space-available basis, transportation back to Milwaukee on the military aircraft assigned to transport General Olson home. The request was granted. The aircraft crashed on its flight from Key West to Milwaukee, killing General Olson, his wife, and Captain Herreman.

The visit to Key West to fish with the General was a purely social visit. At the time of the crash of the aircraft, Herreman was not on any mission pertaining to the Wisconsin Army National Guard. Neither he nor his unit of assignment was in active federal service. He was not on active duty for training or inactive duty training in his Army National Guard of the United States status, nor was he performing training or duty as a member of the Army National Guard.

Herreman's widow brought this action pursuant to 28 U.S.C. § 2674 of the Federal Tort Claims Act, asserting that the United States is liable. She also named the Wisconsin Air National Guard as a defendant. After several affidavits were filed by the parties, the district court entered a summary judgment in favor of the United States and dismissed the claim against the Wisconsin Air National Guard. The court concluded at 332 F.Supp. 763, 766 (E.D.Wis.1971):

"[E]ven if a soldier is on leave or off duty, alternatively (1) if the soldier is injured taking advantage of military privileges generally restricted to the military and not generally permitted civilians, or (2) if the soldier is injured while under military jurisdiction, then (whichever way the rule is phrased) he will be barred from suing the Government. In the instant case, Captain Herreman was fatally injured while taking advantage of special travel privileges granted military personnel. While taking advantage of this privilege, it is undisputed that he was under military jurisdiction. The fact that he was not on active duty or

that he was pursuing purely pleasurable activities is of no . . . relevance . . .."

The outer dimensions of this problem are measured by two Supreme Court cases decided in successive years.

In Brooks v. United States, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), two brothers who were then members of the armed forces of the United States on furlough, driving their own automobile along a highway, collided at an intersection with a United States Army truck. The Court held that their injuries were "not incident to their service" and that their claims were therefore cognizable under the Federal Tort Claims Act. 28 U.S.C. § 2674.

In Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), three servicemen while on active duty and not on furlough sustained injury due to the negligence of others in the armed forces. The Court held that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." Id. at 146, 71 S.Ct. at 159.

The issue in this case is whether Herreman's activity at the time he was killed in the crash was incident to his service.

At the time of his death Herreman was a member of the Wisconsin Army National Guard with the rank of captain, assigned to the Selective Service Section, Headquarters and Headquarters Detachment at Madison, Wisconsin. In accordance with 10 U.S.C. § 3351(a), he was also a federally recognized captain in the Army National Guard of the United States, a reserve component of the United States Army. 10 U.S.C. § 3077. "The Army consists of . . . the Regular Army, the Army National Guard of the United States . . .". 10 U.S.C. § 3062(c)(1). Hence, Herreman at the time of his death was a member of the United States Army. See Layne v. United States, 190 F.Supp. 532 (S.D.Ind.1961), affirmed, 295 F.2d 433 (7th Cir. 1961), cert. denied, 368 U. S. 990, 82 S.Ct. 605, 7 L.Ed.2d 527 (1962).

"The transportation of members . . . of the Army throughout the United States shall be under the immediate control and supervision of the Secretary of the Army and agents appointed or designated by him." 10 U.S.C. § 4741. Similarly, the transportation of members of the Air Force is under the control and supervision of the Secretary of the Air Force. 10 U.S.C. § 9741.

The aircraft in which Herreman was killed was military property of the United States but was assigned to the Wisconsin Air National Guard for its use. At the time of the crash, the aircraft had been on a duly authorized flight for the purpose of providing navigational training for Wisconsin Air National Guard personnel on board the aircraft and of transporting Major General Olson from Key West Naval Air Station, Florida, to Milwaukee, Wisconsin.

Pursuant to his power to control and supervise the transportation of "members [and] . . . equipment" of the Air Force (10 U.S.C. § 9741), of which the Air National Guard of the United States is a component part (10 U.S.C. § 8062(d)(1), the Secretary of the Air Force promulgated Air National Guard Regulations No. 76–6 (May 23, 1950), which included paragraph 4b which describes passengers to include as follows:

"Military personnel in appropriate uniform in the categories indicated below, without reimbursement, upon proper identification and when the aircraft is on a duly scheduled training flight, or on a strictly military mission. No flight of an Air National Guard aircraft will be scheduled for the specific purpose of transporting military personnel on leave but such

personnel may ride as passengers when the aircraft is on a training flight or a strictly military mission.

\* \* \* \* \* \*

"(2) Military personnel of the National Guard . . ."

It is not disputed that the aircraft in this case was on a duly authorized and duly scheduled navigational training flight. Herreman was riding in uniform on the aircraft as a non-paying passenger. While on board the aircraft, he was subject to military courtesies and discipline. Most important however, he was subject to the "immediate control and supervision" of both the Secretary of the Army and the Secretary of the Air Force and "agents appointed or designated" by them.[1] He was on board a military training flight engaged in a military mission.

The situation comes very close to that existing in Archer v. United States, 217 F.2d 548 (9th Cir. 1954), cert. denied, 348 U.S. 953, 75 S.Ct. 441, 99 L.Ed. 745 (1955), where a cadet on leave from the United States Military Academy at West Point was "riding gratuitously in a military plane under military discipline and under the laws and regulations in force at the time." *Id.* at 550. In dismissing the claim of the cadet's parents under the Federal Tort Claims Act, the Court said at 551, 552:

"The Trial Court was undoubtedly correct in holding that a cadet riding under military discipline on an army plane under control of a superior officer has no claim under the Act for injury sustained through whatever cause. This principle would not vary even though the service man were on leave and whether he were on the plane voluntarily or by command. He was in line of duty. Under such circumstances, his parents could not recover for his death.

\* \* \* \* \* \*

". . . In riding aboard that plane, under these allegations, Herman Archer was either 'in command' or 'under command.'

"The complaint in this case on its face did not state a cause of action or a claim upon which relief could be granted against the United States."

Here also, Herreman was "in line of duty" and "under command." Under those circumstances, his activity at the time he was killed was incident to his service. The district court properly rendered judgment for the government under Feres v. United States, *supra.*

It is significant that if Herreman had sought passage without his uniform and in the capacity of non-military or civilian personnel, it would have been necessary (1) for Major General Olson to execute "a certificate to be attached to the flight clearance certifying" that Herreman was "on National Guard business," Air National Guard Regulations No. 76–6, par. 4j, and (2) for Herreman to execute a release releasing and discharging "the Government of the United States, and all of its officers and agents, acting officially or otherwise, from any and all claims, demands, actions, or causes of action, on account of my death or on account of any injury to me which may occur by reason of the said flight . . . ." No. 76–6, par. 6.

The judgment is affirmed.

Affirmed.

---

1. As an Army officer, Herreman was also subject to 10 U.S.C. § 4743, which provides:

"Under such conditions as the Secretary of the Army may prescribe, officers of the Army may, in the performance of their duties, use means of transportation provided for the Army and its supplies." A similar statute applies to Air Force officers using transportation provided for the Air Force. 10 U.S.C. § 9743.