MARYLAND, FOR THE USE OF LEVIN, ET AL. *v.*
UNITED STATES.

No. 345.  Argued March 15, 1965.—Decided May 3, 1965.

*Theodore E. Wolcott* argued the cause and filed briefs for petitioners.

*David L. Rose* argued the cause for the United States. With him on the brief were *Solicitor General Cox, Assistant Attorney General Douglas, Nathan Lewin* and *Morton Hollander*.

*Louis G. Davidson, Richard W. Galiher, William E. Stewart, Jr.,* and *Peter J. McBreen* filed a brief as *amici curiae,* urging reversal.

MR. JUSTICE HARLAN delivered the opinion of the Court.

The question we decide here is whether a civilian employee and military member of the National Guard is an "employee" of the United States for purposes of the Federal Tort Claims Act when his National Guard unit is not in active federal service.[1]

---

[1] The Federal Tort Claims Act provides in pertinent part:

28 U. S. C. § 1346 (1958 ed.):

"(b) Subject to the provisions of chapter 171 of this title, the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

28 U. S. C. § 2671:

"As used in this chapter and sections 1346 (b) and 2401 (b) of this title, the term—

" 'Federal agency' includes the executive departments and independent establishment of the United States, and corporations primarily acting as, instrumentalities or agencies of the United States but does not include any contractor with the United States.

" 'Employee of the government' includes officers or employees of any federal agency, members of the military or naval forces of the

Petitioners' decedents were passengers on a Capital Airlines plane that collided over Maryland with a jet trainer assigned to the Maryland Air National Guard. The only survivor of the accident was the pilot of the trainer, Captain McCoy, and it is not disputed that the collision was caused by his negligence. The estates of the pilot and co-pilot of the Capital plane, and Capital Airlines itself, filed suit against the United States under the Federal Tort Claims Act in the District Court for the District of Columbia, and recovered judgments. The Court of Appeals for the District of Columbia Circuit affirmed, *United States* v. *Maryland for the use of Meyer*, 116 U. S. App. D. C. 259, 322 F. 2d 1009, cert. denied, 375 U. S. 954, motion for leave to file petition for rehearing pending, No. 543, 1963 Term. Meanwhile, petitioners filed a similar suit in the Western District of Pennsylvania, and all parties agreed to proceed solely on the record made in the *Meyer* case. The District Court rendered judgment for petitioners, but the Court of Appeals for the Third Circuit reversed. 329 F. 2d 722. We granted certiorari, 379 U. S. 877, to resolve the conflict between the two Circuits on this single record, and, more broadly, to settle authoritatively the basic question stated at the outset of this opinion which is at the core of other litigation arising out of this same disaster, now pending in a number of courts in different parts of the country.[2]

---

United States, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation."

28 U. S. C. § 2674:

"The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."

[2] We are informed that such litigation is pending in Illinois, Ohio, and New York.

Captain McCoy held a commission from the Governor of Maryland as an officer in the Maryland Air National Guard, and he served on alternate Saturdays as a fighter pilot and Squadron Maintenance Officer with the 104th Fighter Interceptor Squadron. During the rest of the month Captain McCoy was employed by the Guard in a civilian capacity as Aircraft Maintenance Chief under 32 U. S. C. § 709 (1958 ed.), the so-called federal "caretaker" statute.[3] In his civilian capacity Captain McCoy

---

[3] National Defense Act of 1916, § 90, 39 Stat. 166, as amended, now 32 U. S. C. § 709 (1958 ed.):

"(a) Under such regulations as the Secretary of the Army may prescribe, funds allotted by him for the Army National Guard may be spent for the compensation of competent persons to care for material, armament, and equipment of the Army National Guard. Under such regulations as the Secretary of the Air Force may prescribe, funds allotted by him for the Air National Guard may be spent for the compensation of competent persons to care for material, armament, and equipment of the Air National Guard. A caretaker employed under this subsection may also perform clerical duties incidental to his employment and other duties that do not interfere with the performance of his duties as caretaker.

"(b) Enlisted members of the National Guard and civilians may be employed as caretakers under this section. However, if a unit has more than one caretaker, one of them must be an enlisted member. Compensation under this section is in addition to compensation otherwise provided for a member of the National Guard.

"(c) Under regulations to be prescribed by the Secretary concerned, material, armament, and equipment of the Army National Guard or Air National Guard of a State or Territory, Puerto Rico, the Canal Zone, or the District of Columbia may be placed in a common pool for care, maintenance, and storage. Not more than 15 caretakers may be employed for each of those pools.

"(d) Under regulations to be prescribed by the Secretary concerned, one commissioned officer of the National Guard in a grade below major may be employed for each pool set up under subsection (c) and for each squadron of the Air National Guard. Commissioned officers may not be otherwise employed under this section.

"(e) Funds appropriated by Congress for the National Guard are in addition to funds appropriated by the several States and Terri-

supervised the maintenance of the squadron aircraft assigned to the Air National Guard but owned by the United States. On the day of the accident, Captain McCoy had obtained permission from his superior to take a passenger on a flight in order to interest the passenger in joining the Air National Guard. The principal factual dispute below was whether at the time of the accident Captain McCoy was performing his duties with the Guard in a military or civilian capacity. A line of cases in the courts of appeals beginning with *United States* v. *Holly,* 192 F. 2d 221 (C. A. 10th Cir., 1951), has held that civilian "caretakers" are employees of the United States for purposes of suit under the Federal Tort Claims Act.[4] Another line of cases has been equally consistent in treating military members of the Guard as employees of the States, not the Federal Government.[5] We do not deal with the factual question, on which the decision below turned,[6] since, in agreement with the views

tories, Puerto Rico, the Canal Zone, and the District of Columbia for the National Guard, and are available for the hire of caretakers and clerks.

"(f) The Secretary concerned shall fix the salaries of clerks and caretakers authorized to be employed under this section, and shall designate the person to employ them."

[4] *Elmo* v. *United States,* 197 F. 2d 230 (C. A. 5th Cir.); *United States* v. *Duncan,* 197 F. 2d 233 (C. A. 5th Cir.); *Courtney* v. *United States,* 230 F. 2d 112 (C. A. 2d Cir.); *United States* v. *Wendt,* 242 F. 2d 854 (C. A. 9th Cir.).

[5] *Williams* v. *United States,* 189 F. 2d 607 (C. A. 10th Cir.); *Dover* v. *United States,* 192 F. 2d 431 (C. A. 5th Cir.); *McCranie* v. *United States,* 199 F. 2d 581 (C. A. 5th Cir.); *Storer Broadcasting Co.* v. *United States,* 251 F. 2d 268 (C. A. 5th Cir.); *Bristow* v. *United States,* 309 F. 2d 465 (C. A. 6th Cir.); *Pattno* v. *United States,* 311 F. 2d 604 (C. A. 10th Cir.); *Blackwell* v. *United States,* 321 F. 2d 96 (C. A. 5th Cir.).

[6] A majority of the Court of Appeals held, contrary to the District Court, that McCoy was acting in his military capacity at the time of the accident.

of Judge Smith [7] and in disagreement with the Court of Appeals in the *Meyer* case, we hold that in both capacities Captain McCoy was an employee of the State of Maryland, and not of the United States. Hence the United States cannot be held liable under the Tort Claims Act for his negligence in either capacity.

## I.

The National Guard is the modern Militia reserved to the States by Art. I, § 8, cl. 15, 16, of the Constitution.[8] It has only been in recent years that the National Guard has been an organized force, capable of being assimilated with ease into the regular military establishment of the United States. From the days of the Minutemen of Lexington and Concord until just before World War I, the various militias embodied the concept of a citizen army, but lacked the equipment and training necessary for their use as an integral part of the reserve force of the United States Armed Forces.[9] The passage of the National Defense Act of 1916 [10] materially altered the status of the militias by constituting them as the National Guard. Pursuant to power vested in Congress by the Constitution (see n. 8), the Guard was to be

---

[7] Of the other two members of the panel, Judge Hastie did not reach the question whether civilian Guard employees were embraced within the Tort Claims Act, and Judge Staley was in accord with the views of the District of Columbia Circuit in *Meyer*.

[8] "The Congress shall have Power . . .

"To provide for calling forth the Militia to execute the Laws of the Union, suppress Insurrections and repel Invasions;

"To provide for organizing, arming, and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and the Authority of training the Militia according to the discipline prescribed by Congress."

[9] See generally, Wiener, The Militia Clause of the Constitution, 54 Harv. L. Rev. 181 (1940).

[10] 39 Stat. 166 (1916).

uniformed, equipped, and trained in much the same way as the regular army, subject to federal standards and capable of being "federalized" by units, rather than by drafting individual soldiers.[11] In return, Congress authorized the allocation of federal equipment to the Guard, and provided federal compensation for members of the Guard, supplementing any state emoluments. The Governor, however, remained in charge of the National Guard in each State except when the Guard was called into active federal service; in most instances the Governor administered the Guard through the State Adjutant General,[12] who was required by the Act to report periodically to the National Guard Bureau, a federal organization, on the Guard's reserve status.[13] The basic structure of the 1916 Act has been preserved to the present day.

Section 90 of the National Defense Act authorized the payment of federal funds for the employment by the Guard of civilian "caretakers" to be responsible for the upkeep of federal equipment allocated to the National Guard.[14] This section was later amended to make explicit that employment as a caretaker could be held by officers in the Guard, who would receive a full-time salary

---

[11] National Defense Act, § 111, now 10 U. S. C. § 672 (1964 ed.). See Wiener, *supra*, n. 9.

[12] See 32 U. S. C. § 314 (1958 ed.).

[13] National Defense Act, § 66, as amended, now 32 U. S. C. § 314 (d) (1958 ed.).

[14] "Funds allotted by the Secretary of War for the support of the National Guard shall be available . . . for the compensation of competent help for the care of the material, animals, and equipment thereof, under such regulations as the Secretary of War may prescribe: *Provided,* That the men to be compensated, not to exceed five for each battery or troop, shall be duly enlisted therein and shall be detailed by the battery or troop commander, under such regulations as the Secretary of War may prescribe, and shall be paid by the United States disbursing officer in each State, Territory, and the District of Columbia." 39 Stat. 205.

as civilian caretakers, and in addition would receive compensation for service as military members of the Guard.[15] The legislative history of these amendments makes clear that the State Adjutant General could appoint officers of the Guard to serve as civilian caretakers, provided only that the appointees met the requirements established by the federal authorities.[16]

## II.

It is not argued here that military members of the Guard are federal employees, even though they are paid with federal funds and must conform to strict federal requirements in order to satisfy training and promotion standards. Their appointment by state authorities and the immediate control exercised over them by the States make it apparent that military members of the Guard are employees of the States, and so the courts of appeals have uniformly held. See n. 5, *supra*. Civilian caretakers should not be considered as occupying a different status. Caretakers, like military members of the Guard, are also paid with federal funds and must observe federal requirements in order to maintain their positions.[17] Although they are employed to maintain federal property, it is property for which the States are responsible, and its maintenance is for the purpose of keeping the state militia in a ready status. The National Defense Act of 1916 authorized the allocation of federal property to the National Guard, but provided

"That as a condition precedent to the issue of any property as provided for by this Act, the State, Terri-

---

[15] Act of June 19, 1935, 49 Stat. 391.

[16] See S. Rep. No. 635, 74th Cong., 1st Sess., pp. 2–3, quoted *infra*, p. 51.

[17] Detailed requirements for civilian caretakers are set out in Air National Guard Regulation No. 40–01, dated December 20, 1954 (hereinafter ANGR 40–01), and Air National Guard Manual No. 40–01, dated March 1, 1958.

tory, or the District of Columbia desiring such issue shall make adequate provision, to the satisfaction of the Secretary of War, for the protection and care of such property . . . ." [18]

The Act also provided that damage or loss of federal property would be charged to the States, unless the Secretary of War determined that the damage or loss was unavoidable.[19]  Caretakers appointed under § 90 of the Act were thus to perform a state function, the maintenance of federal equipment allocated to the Guard.[20]  The caretakers have been termed the "backbone" of the Guard,[21] and are the only personnel on duty with Guard units during the greater part of the year.  Like their military counterpart, caretakers are appointed by the State Adjutant General,[22] and are responsible to him in the performance of their daily duties.  They can be discharged and promoted only by him.[23]  Civilian caretakers are treated as state employees for purposes of the Social Security Act,[24] for state retirement funds,[25] and under the regula-

[18] National Defense Act, § 83, 39 Stat. 203, 204, now 32 U. S. C. § 702 (d)  (1958 ed.).

[19] *Id.,* § 87, now 32 U. S. C. § 710 (1958 ed.).

[20] In 1926 Congress authorized the employment of National Guard officers as caretakers, limited to one per squadron, in order to provide "an officer constantly on duty at the flying field for the supervision of flying training."  H. R. Rep. No. 1031, 69th Cong., 1st Sess., p. 3, explaining the amendment to § 90 of the National Defense Act, enacted as Act of May 28, 1926, 44 Stat. 673, now 32 U. S. C. § 709 (d) (1958 ed.).  See also S. Rep. No. 785, 69th Cong., 1st Sess.  Training, of course, was a duty reserved to the States by § 91 of the National Defense Act and by Art. I, § 8, cl. 16, of the Constitution.

[21] Hearings before the Subcommittee of the House Appropriations Committee, 84th Cong., 2d Sess., p. 1303.

[22] ANGR 40–01, ¶¶ 3 (b), 7 (a).

[23] *Id.,* ¶ 3.

[24] Act of Aug. 14, 1935, c. 531, 49 Stat. 620, as amended, 42 U. S. C. § 418 (b)(5)  (1958 ed.).

[25] Act of June 15, 1956, c. 390, 70 Stat. 283, as amended, 5 U. S. C. § 84d (1964 ed.).

tions issued by the Department of the Air Force.[26]   As early as 1920 the Comptroller of the Treasury ruled that a civilian caretaker was not a federal employee entitled to the annual leave provisions applicable to the War Department,[27] an opinion that was reiterated in 1941 by the Comptroller General [28] and that reflects the consistent position of the Department of Defense.[29]

*United States* v. *Holly, supra,* decided in 1951, held that civilian caretakers were employees of the United States, and has since been followed in other courts of appeals (n. 4, *supra*).   *Holly* rested on a construction of the National Defense Act which, in our view, is not supported by the legislative history.   Although the original section provided that caretakers were to "be detailed by the battery or troop commander" (who was a state employee), n. 14, *supra,* in 1935 Congress amended the statute to provide that the Secretary of the military establishment concerned (here the Secretary of the Air Force) "shall *designate* the person to employ" the caretaker.[30] The court in *Holly* read this amendment to mean that caretakers could be employed directly by federal authorities or by the State Adjutant General acting as a federal agent.   However, the purpose of the amendment was simply to permit a State to pool its caretakers, and not to restrict the employment of such personnel only to those on the military roster of the unit where the equipment was allotted.   The Senate report indicates that

[26] ANGR 40–01, ¶ 4, provides:

"Air National Guard civilian personnel are considered to be employees of the State, Territory, Puerto Rico, or the District of Columbia (21 Comp Gen Dec. 305)."

[27] 27 Comp. Dec. 344 (1920).

[28] 21 Comp. Gen. 305 (1941).

[29] See S. Rep. No. 1502, 86th Cong., 2d Sess., p. 6; H. R. Rep. No. 1928, 86th Cong., 2d Sess., p. 6.

[30] *Supra,* n. 15, now 32 U. S. C. § 709 (f) (1958 ed.) (emphasis supplied).

Congress envisaged that caretakers would continue to be employed only by the state authorities. It stated:

"Section 6 of S. 2710 will authorize the pooling of National Guard caretakers. Under present law States are required to select the caretakers from the units that have the material. Section 6 will permit the handling under the adjutant general or other proper State official of the caretakers as a pool." [31]

It seems clear, then, that no significant distinction was intended between the method of employing military and civilian personnel of the National Guard.

Congress again in 1954 accepted the Defense Department understanding that civilian caretakers were employees of the States. In amending the Social Security Act (68 Stat. 1059, 42 U. S. C. § 418 (b)(5) (1958 ed.)) to provide coverage for civilian caretakers as state employees, the committee reports stated:

"This provision would establish as a separate coverage group civilian employees of State National Guard units who are employed pursuant to section 90 of the National Defense Act . . . and paid from funds allotted to such units by the Department of Defense. These employees would also be deemed to be employees of the State. The Department of Defense does not regard these employees as Federal employees . . . ." [32]

In 1956 Congress authorized federal disbursing officers to withhold from the salaries of civilian caretakers amounts needed by the States for their retirement systems. Although Congress was aware of the *Holly* line of cases,[33] the Senate report stated that authority was

[31] S. Rep. No. 635, 74th Cong., 1st Sess., pp. 2–3.

[32] S. Rep. No. 1987, 83d Cong., 2d Sess., pp. 45–46; H. R. Rep. No. 1698, 83d Cong., 2d Sess., p. 50.

[33] S. Rep. No. 2045, 84th Cong., 2d Sess., p. 4.

necessary since "[t]hese employees, although paid from Federal funds, are considered to be State rather than Federal employees. Accordingly, State authorities have been unable to make the usual deduction of the employee's contribution into the retirement system." S. Rep. No. 2045, 84th Cong., 2d Sess. (1956).

In 1960 it was proposed to extend the coverage of the Federal Tort Claims Act to include civilian and military personnel of the National Guard.[34] This proposal was rejected, and the bill that finally passed provides an administrative procedure whereby the proper Secretary can pay claims up to $5,000 for damage to persons or property caused by National Guard personnel.[35] The Act includes liability for personal injury caused by civilian caretakers, even though the Justice Department called to the attention of Congress the line of cases indicating that acts of civilian caretakers were already covered under the Federal Tort Claims Act.[36] The committee reports of both the House and Senate reflect acceptance of the position advocated by the Department of the Army that civilian caretakers should be included in the bill along with their military counterparts.[37]

In sum, we conclude that the congressional purpose in authorizing the employment by state authorities of civilian caretakers, the administrative practice of the Defense Department in treating caretakers as state employees, the consistent congressional recognition of that

[34] S. 1764 and H. R. 5435, 86th Cong., 2d Sess.

[35] Act of September 13, 1960, 74 Stat. 878, 32 U. S. C. § 715 (1958 ed., Supp. IV). If the claim is for more than $5,000 and the Secretary deems it meritorious he may award up to $5,000 and certify the balance to Congress for appropriate action.

[36] See S. Rep. No. 1502, 86th Cong., 2d Sess., p. 11; Hearings before Subcommittee No. 2 of the House Committee on the Judiciary on H. R. 5435 and H. R. 9315, 86th Cong., 2d Sess., pp. 6–7.

[37] See S. Rep. No. 1502, supra; H. R. Rep. No. 1928, supra. The 1960 Act does not cover the accident involved in these cases, since the collision occurred in 1958.

status, and the like supervision exercised by the States over both military and civilian personnel of the National Guard, unmistakably lead in combination to the view that civilian as well as military personnel of the Guard are to be treated for the purposes of the Tort Claims Act as employees of the States and not of the Federal Government. This requires a decision that the United States is not liable to petitioners for the negligent conduct of McCoy.[38]

In so holding we are not unmindful that this doubtless leaves those who suffered from this accident without effective legal redress for their losses.[39] It is nevertheless our duty to take the law as we find it, remitting those aggrieved to whatever requitement may be deemed appropriate by Congress, which in affording the administrative remedies, unfortunately not available here (see n. 37), has shown itself not impervious to the moral demands of such distressing situations.

*Affirmed.*

MR. JUSTICE DOUGLAS dissents.

---

[38] Petitioners contend that the judgments of the District of Columbia Circuit in *Meyer* should be given collateral estoppel effect here, even though petitioners were not parties in *Meyer*. See Restatement, Judgments § 93, comment *b;* Developments in the Law—*Res Judicata,* 65 Harv. L. Rev. 818, 865, 870–871 (1952); but see *United States* v. *United Air Lines, Inc.,* 216 F. Supp. 709, aff'd on other grounds *sub nom. United Air Lines, Inc.* v. *Wiener,* 335 F. 2d 379, writ of cert. dismissed under Rule 60, 379 U. S. 951. We reject the Government's contention that the point was not preserved below. Having regard to the fact that the decision in *Meyer* came down during the interval between the argument and decision of *Levin,* we think that the estoppel challenge was properly and timely raised in the petition for rehearing in *Levin.* However, we need not reach the merits of the challenge since the judgment in *Meyer,* also pending in this Court (see p. 43, *supra*), must, in any event, now fall in consequence of our decision in the cases before us.

[39] The State of Maryland has not, so far as we know, waived its sovereign immunity, and petitioners are not eligible for benefits under 32 U. S. C. § 715, *supra,* n. 35.