Betty Lue **HAYNES**, as **Administratrix of the Estate of Eugene O. Haynes,** Plaintiff,

v.

**UNITED STATES of America,** **Defendant.**

**Civ. No. 11076.**

United States District Court,
W. D. New York.

May 7, 1970.

Sheldon Hurwitz, Buffalo, N. Y., for plaintiff.

H. Kenneth Schroeder, Jr., U. S. Atty. (C. Donald O'Connor, Buffalo, N. Y., of counsel), for defendant.

JOHN O. HENDERSON, Chief Judge.

Johnnie B. Sheffield on October 21, 1963, struck and killed plaintiff's intestate who was a passenger in a truck operated by another on Route 15 in the State of Virginia. At the time of the mishap it is alleged that the automobile owned and operated by Sheffield was being driven on the wrong side of Route 15.

The plaintiff, in her representative capacity, has brought this action against the United States claiming that at the time of the accident Sheffield was an employee of the United States Department of Agriculture or was a person acting on behalf of a federal agency within the scope of his employment. For the convenience of the parties and witnesses, the court, pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, ordered a trial on the issue of whether the alleged tortfeasor was an employee of the United States or one acting on behalf of a federal agency at the time of the accident, reserving the question of damages pending that determination.

Prior to and during October 1963, Sheffield was engaged as a licensed inspector of the United States Department of Agriculture engaged in the inspection of fruits and vegetables. Cf. 7 U.S.C. §§ 1621 et seq. That fact, however, in itself does not end the inquiry as to whether or not he was an "employee" pursuant to section 2671 of Title 28, U.S.C. which provides that an employee of the government includes "officers or employees of any federal agency, * * * and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation." Section 1621 of Title 7, U.S.C. declares it to be the intent of Congress that the United States cooperate with the states in the inspection of agricultural products. Section 1622 directs the Secretary of Agriculture "to develop and improve standards of quality, condition, quantity, grade, and packaging * * * to encourage uniformity and consistency in commercial practices." Section 1622(c). Pursuant to these statutes and in furtherance of the congressional purpose to provide uniform grading of fruits and vegetables on a nationwide basis, Sheffield was one of a number of shipping point inspectors of fresh fruits and vegetables. He had worked in the State of Georgia during 1963 and traveled to New York early in September and worked there from September 26, 1963 to October 20, 1963 (it appears he was actually paid through October 21, 1963).

Each state has one federal supervisor whose salary is paid by the federal government. The evidence also discloses that the state thereafter reimburses the federal government for the amount of his salary. In addition to the federal supervisor, many states have a body of full-time inspectors, all licensed, who inspect and grade fruits and vegetables in the particular state. However, since the work is to a large extent seasonal, additional inspectors are recruited on a

part-time basis. Many of these inspectors are licensed but work each year only in the state where they live and do not travel to work in other states. In some instances, however, during peak seasons additional inspectors are needed, and in some cases the supervisors obtain additional inspectors by contacting their counterparts in other states and advising them that work is available in their locale. In some instances where additional inspectors are necessary, the states needing inspectors contact an office of the Department of Agriculture and advise that office that work is available in those areas and, thereafter, when inspectors have completed a job in another locale, they contact that office to learn where other inspection work may be available. In this way the office of the Department of Agriculture acts as a clearinghouse to notify inspectors of available work elsewhere.

The Department of Agriculture in this scheme trains the inspectors, licenses them, and in all ways attempts to see to it that the fruits and vegetables are graded in a uniform way throughout the United States.

It appears that Mr. Sheffield completed his work in New York about October 20, 1963, and thereafter called the office of the Department of Agriculture and learned that there was further work available in Suffolk, Virginia, inspecting and grading peanuts. While making that trip, from New York to Virginia, the accident giving rise to this cause of action occurred. The inspectors licensed under the regulations of the Department of Agriculture are in all cases, except for the lone state supervisor, paid for by the states. In the instances of those who travel from state to state to obtain work no travel order is issued, no expenses are paid by the government, and the federal government does not subsidize the program in any way. In issuing the license the government has set up no qualifications as to personal background, experience, age, physical characteristics, etc. No credits are allowed for federal military service, and in no instance does the federal government determine who should be hired in the program, the requirements varying significantly from state to state. Application for such employment is made to the state and the inspector, when hired and licensed, is paid by the state, the salaries varying from state to state. The state determines the hours of work and provisions for overtime, and on those occasions when the inspector is supplied with a work uniform, badge or vehicle, these also are provided by the state. In some instances the state does assign additional duties to shipping point inspectors who function beyond the scope of the federal license. The federal government's only interest in the licensee is that there be a uniform standard of grading. The inspection service performed by the inspectors is operated for the use of the trade in determining the grade and condition of products and is not mandatory intrastate or interstate, its purpose being only to determine quality on a nationwide uniform basis.

The regulations issued by the United States Department of Agriculture (Exhibit P-5) provide:

"Inspector" means any employee of the Department who is authorized by the Secretary, or any other person licensed by the Secretary, to investigate, sample, inspect, and certify, in accordance with the regulations in this part, to any interested party the quality and/or condition of any product covered under this part, and to perform related duties in connection with such inspection services. 7 CFR § 51.2(i).

The regulations, therefore, establish two types of inspector: (1) employees of the Department of Agriculture and (2) "any other person licensed by the Secretary." It appears to this court that Mr. Sheffield was within the contemplation of the second category of inspector created by the United States Department of Agriculture, i. e., an inspector who was not an employee of that department.

Since this court is of the opinion that Mr. Sheffield was not an employee of

the Department of Agriculture, the court must only determine whether he was at the time of the accident a person "acting on behalf of a federal agency in an official capacity."

The plaintiff in this regard relies heavily on both the "Shipping Point Handbook" published by the Department of Agriculture (Exhibit P-10), the "bible" of the inspectors, which lays down a considerable number of rules for inspectors, both in the performance of their duties and in related rules of personal conduct, and on the inspection certificate issued by such inspectors (Exhibit P-11). The former contains no more than suggestions of the Department of Agriculture to be used as guidelines for inspectors in the performance of their duties, both as to the performance of the inspection itself and the conduct of the inspector to the extent that he may be identified by the public as a representative of its government whose conduct must be above reproach in every respect.

The inspection certificate likewise demonstrates no more than the fact that the product has been graded according to standards which have been made uniform throughout the nation. On this question this court is of the opinion that the language of Circuit Judge Augustus Hand is appropriate in considering whether or not Sheffield was acting on behalf of a federal agency:

> Perhaps they were to some extent acting on behalf of a federal agency * * * but to impose a liability based upon a putative agency over which the principal had no more control than in the present case would stretch governmental responsibility too far and might include all sorts of situations * * *."

Lavitt v. United States, 177 F.2d 627 at 630 (2d Cir. 1949).

Consideration of all the facts and circumstances surrounding the employment of Sheffield, including his treatment by the respective states in which he had performed inspection work, and the limited control of the federal government over such inspectors, leads this court to conclude that at the time of the accident in question Johnnie B. Sheffield was neither an employee of an agency of the federal government nor a person acting on behalf of a federal agency in an official capacity. Cf. generally Maryland for Use of Levin v. United States, 381 U.S. 41, 85 S.Ct. 1293, 14 L.Ed.2d 205 (1965).

The complaint is therefore dismissed. It is so ordered.