Aerline R. **SHIPPEY**, a widow, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

**Civ. No. 69–1430.**

United States District Court,
S. D. Florida,
Miami Division.

Dec. 31, 1970.

Fred A. Hazouri, of Cone, Wagner, Nugent, Johnson, McKeown & Dell, West Palm Beach, Fla., for plaintiff.

Robert W. Rust, U. S. Atty., and Clemens Hagglund, Asst. U. S. Atty., Miami, Fla., for defendant.

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

ATKINS, District Judge.

This is a wrongful death action brought against the United States of America pursuant to the Federal Tort Claims Act (Title 28 U.S.C.A. § 2671 et seq.). Defendant has challenged jurisdiction of this Court under the aforesaid act by way of Motion to Dismiss and Motion for Summary Judgment. Both motions were denied by the Court on the basis that a sufficient factual foundation was not apparent from the record at that time to justify their being granted. Trial was held in Fort Pierce, Florida on October 28, 1970 before the Court without a jury. Pursuant to the pretrial stipulation the first issue to be tried was the jurisdiction of this Court under the above Act. The Court also permitted testimony on the issues of liability and damage. It now appears that this Court does not have jurisdiction. Accordingly, the case must be dismissed.

Plaintiff is the widow of Jake P. Shippey who was killed in an automobile accident on August 12, 1968 in Rochelle, Georgia. The deceased was a passenger in an automobile owned and operated by Joseph Edison Hayes. It is alleged that Hayes was grossly negligent in operating the motor vehicle when it collided with a train owned by the Seaboard Coastline Railroad Company. At the time of the accident both Hayes and Shippey were inspectors for the Georgia Federal-State Inspection Service. It is the allegation of plaintiff that Hayes was, while in this capacity, an employee of the United States Department of Agriculture acting within the scope and course of his employment or a person acting on behalf of a federal agency at the time of the accident.

At the trial, plaintiff was able to show many indicia of employment of Hayes by the federal government. The indicia shown are so numerous and involved that they will be mentioned here only in capsule form: licensing of inspectors; setting inspection standards; implications from provisions in the inspector's handbook; federal supervisor; statement of Congressional policy; clearinghouse for employment; and the power to suspend and revoke inspectors' licenses. None of these indicia, even in their cumulative effect, however,

is sufficient to impose liability on the Defendant for the negligence of Hayes.

All of these criteria existed in the case of Haynes v. United States, (Civil 11076, May 7, 1970, W.D.N.Y., Henderson, J.). The complaint in that case was dismissed for lack of jurisdiction. Only one possible distinction can be drawn between that case and the case sub judice. It is not clear from that opinion whether or not the New York inspection service collects fees and pays its employees in the same manner as Georgia.[1] Counsel for plaintiff has argued very forcefully that since the inspection being performed by Mr. Hayes was an inspection required by federal regulations (referred to as "the peanut deal"), the inspection fee recovered from the shippers was money paid into the Federal-State Trust Fund for the benefit of the federal government. In turn, when Hayes was paid his salary from the same Trust Fund, it was federal money for federal work. This argument is not supported by the law.

In the long line of National Guard cases it is the rule that the federal government does not become liable for the torts of the guardsman until he is called into federal service. Maryland for Use of Levin v. United States, 381 U.S. 41, 85 S.Ct. 1293, 14 L.Ed.2d 205 (1965). The concept of setting standards, training guardsmen and the existence of a Congressional policy and a working agreement with the State implementing that policy is not unlike the situation in the case now before me. The question then becomes whether the performance of the peanut inspection is a "calling into federal service." The Court does not believe the analogy can be carried this far. Therefore, the fees collected for the peanut inspections do not become federal funds. A cursory reading of Title 7 U.S.C. Section 1621 et seq. and the Cooperative Agreement between Agricultural Marketing Service United States Department of Agriculture and Georgia Department of Agriculture makes this conclusion abundantly clear.

■ The central consideration in cases of this nature is the degree of control the federal government exercises over the individual claimed to be a federal employee under the Federal Tort Claims Act. See, Lavitt v. United States, 177 F. 2d 627 (2d Cir. 1949). In determining control the primary emphasis is upon control over the employee in the day-to-day performance of his work as it is being accomplished. Strangi v. United States, 211 F.2d 305 (5th Cir. 1954). The Court finds there was not sufficient control present in this case to render Hayes a federal employee.

■ Although there are many possible signs of control, many of which exist here, there is none which can be said to be the dominating influence in all cases. In Martarano v. United States, 231 F. Supp. 805 (D.Nev.1964), the employee was hired, paid and instructed by the State of Nevada yet he was found to be a federal employee because the State had entered into a cooperative agreement wherein "direct supervision" of "all operations" was assigned to a federal agency and, in fact, the federal agency did exercise the assigned control. Delgado v. Akins, 236 F.Supp. 202 (D.Ariz.1964), is dispositive. There, an employee of the County Agricultural Stabilization and Conservation Service was found to be a federal employee under the Federal Tort Claims Act because he was paid with funds supplied by the U.S. Treasury, the organization was an arm of the United States Department of Agriculture, the United States Department of Agriculture set the standards, salaries and hiring practices and there were a series of handbooks that explicitly recited that the County group was an agency of the United States Department of Agriculture.

1. The Georgia Federal-State Inspection Service is funded solely by fees charged shippers and producers for the inspections performed. It is a self-sufficient organization with the Trust Fund acting as the control office of the Service.

The Court is unable to find the quantum of control necessary to make Hayes a federal employee. The Georgia Federal-State Inspection Service is not and cannot be considered an agency of the federal government by virtue of either the mechanism of the Federal-State Trust Fund or the Cooperative Agreement. There is no intention on the part of the federal government by virtue of Title 7 U.S.C. § 1621 et seq. to assume responsibility for the torts of inspectors. Neither the U.S. Department of Agriculture nor any of its agencies or agents exercises any significant control over the day-to-day operation of the Inspection Service.

There are two individuals called federal supervisors (Mr. Sowell and Mr. Brantley) who are paid initially by the federal government which is, in turn, reimbursed by the Trust Fund. It is not necessary to decide whether or not these two individuals are federal employees because the Court finds that no control over the operation of the Inspection Service is exercised by Sowell and Brantley of a nature which would make either the Inspection Service an agency or Hayes an agent of the federal government. The supervisors have the responsibility of licensing and training the inspectors hired by the Inspection Service. They, in no way, supervise the inspectors. They do, however, make periodic checks to assure that the inspectors are properly enforcing the federal standards in their inspections. They have the power to suspend an inspector's license. They cannot hire, fire or assign the inspectors. It appears that there may be some informal influence over assignments and other day-to-day details by virtue of the personal influence of Mr. Sowell. This influence is not official; rather it is attributable to the ability and personality of the individual.

The Court is compelled to find as a matter of fact and law that Hayes was not a federal employee and the United States of America is not responsible for Hayes' alleged tort. Accordingly, the case is dismissed for lack of jurisdiction.