**STATE OF MISSOURI ex rel. Pvt. Don Clark DRANE, Petitioner,**

v.

**Major General L. B. ADAMS, Adjutant General, Missouri National Guard, Respondent.**

**Civ. A. No. 1717.**

United States District Court,
W. D. Missouri,
Central Division.

July 29, 1971.

David V. Bear III, Bear, Hines & Thomas, Columbia, Mo., for petitioner.

Bert C. Hurn, U. S. Atty. and Vernon A. Poschel, Asst. U. S. Atty., Kansas City, Mo., for respondent.

### ORDER REMANDING CAUSE TO CIRCUIT COURT OF COLE COUNTY

WILLIAM H. BECKER, Chief Judge.

The "petition for writ of mandamus" herein was originally filed in the Circuit Court of Cole County. In it, petitioner stated that he enlisted in the Missouri National Guard on or about September 20, 1965; that respondent is the Adjutant General of the Missouri National Guard; that on or about March 8, 1971, he received a notice "that he had been involuntarily inducted into the United States Army, pursuant to the above-entitled regulation [AR 135–91] for failing to attend more than four (4) regularly scheduled drills, within a one-year period"; that, "[T]o the best of the applicant's knowledge, he has not any time, been informed that failure to attend more than four (4) regularly scheduled

drill periods could result in his involuntary induction into the United States Army"; that "[a]t no time was the applicant notified that he had four (4) unexcused absences and that one more unexcused absence from a drilling period would result in his involuntary induction"; that "on December 13, 1970, the above captioned National Guard unit failed to count the applicant present at the morning drill even though the said applicant was present and even though he notified the battery clerk that he was present"; that "on or about January 17, 1971, the above captioned National Guard unit gave the applicant an unexcused absence even though he notified the Commanding Officer of the said unit that he was in the University of Missouri Medical Center emergency room for emergency treatment"; that "the Commanding Officer of the plaintiff's National Guard unit, at the time of his induction was Captain Robert Pugh; that prior to the plaintiff's involuntary induction into the United States Army, Captain Pugh did not personally contact the plaintiff to determine if any cogent reasons existed which caused plaintiff's alleged unexcused absences, as required by AR 135–91"; and that "plaintiff has filed an application for appeal pursuant to AR 135–91 . . . [but] the Adjutant General of the Missouri National Guard has refused to accept or hear plaintiff's appeal." Therefore, petitioner prays for the issuance of a "preemptory (sic) writ of mandamus . . . commanding the said Adjutant General to grant an appeal pursuant to AR 135–91, and for such other judgment as may be proper."

Respondent filed his "petition for removal" to this Court on July 2, 1971. Therein, he cited Section 1442(a) (1), Title 28, United States Code, and Willingham v. Morgan, 395 U.S. 402, 89 S. Ct. 1813, 23 L.Ed.2d 396 (involving the warden and chief medical officer of a United States Penitentiary, rather than a National Guard officer), as authority for removability of this case to the federal courts. The cited statute, Section 1442(a) (1), *supra,* provides for the removal of any case from a state to a federal court "for the district and division embracing the place wherein it is pending" involving:

"(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue."

Respondent accordingly alleges in the petition for removal that:

"All of the acts alleged in the plaintiff's complaint, if they were done by the petitioner, were done under the color of his office as agent of the United States Army."

Under the cases which have hitherto been decided on the question of whether a state National Guard officer is a state or federal officer, however, it has always been resolved that he is a state officer, unless the unit of which he is a member has been called to active duty. See Maryland, for Use of Levin v. United States, 381 U.S. 41, 85 S.Ct. 1293, 14 L.Ed.2d 205; LeFevere v. United States (C.A.5) 362 F.2d 352. The relief requested is the enforcement of a United States Army regulation under which, it is implied, respondent is bound. But according to the statute here relied on for removal, "[t]he determinative feature for removal is the status of the defendant as a federal official. Any contention that the character of the alleged violation is controlling ignores the plain language and well-known purpose of the removal statute." Perez v. Rhiddlehoover (E.D.La.) 247 F.Supp. 65, 71. For the foregoing reasons, on July 9, 1971, the Court entered its order directing respondent to show cause in writing why this action should not be remanded to the Circuit Court of Cole County. The response, filed out of time on July 23, 1971, stated the following:

"1. Major General L. B. Adams in his capacity as Adjutant General of the

Missouri National Guard is a holder of a dual capacity as a member of the Army National Guard of the United States: Sections 261 and 3261, Title 10, United States Code; Section 304, Title 32, United States Code. In his capacity as a member of the Army National Guard of the United States he comes within Section 1442(a) (1), Title 28, United States Code; Johnson v. Powell, 414 F.2d 1060 (5th Cir. 1969).

"2. The Supreme Court case of Maryland ex rel. Levin v. United States, 381 U.S. 41 [85 S.Ct. 1293, 14 L.Ed.2d 205] (1965) is not applicable to this case because the Court's ruling is limited to the application of the Federal Tort Claims Act. Cases cited in footnote 5 of Mr. Justine (sic) Harlan's opinion also deal with the Federal Torts Claim (sic) Act."

The statutes and case cited by respondent, however, do not grant respondent any capacity as an officer of the United States. Section 261, Title 10, United States Code, lists "The Army National Guard of the United States" as a "reserve component . . . of the armed forces." Section 3261 of the same title provides that in order "to become an *enlisted* member of the Army National Guard of the United States," (emphasis added) one must:

"(1) be *enlisted* in the Army National Guard;

"(2) subscribe to the oath set forth in section 304 of title 32; and

"(3) be a member of a federally recognized unit or organization of the Army National Guard in the grade in which he is to be *enlisted* as a reserve." (Emphasis added.)

Section 304 of Title 32, in turn, sets out the "enlistment oath," whereby, among other things, an enlisted member of the National Guard swears allegiance to the United States and to the state and swears to obey the orders of the President and the Governor. But the enlistment in the National Guard of a noncommissioned person is different from the federal recognition of National Guard officers and has different legal implications. Federal recognition of National Guard officers is accomplished individually, under the conditions set down in Section 305 et seq., Title 32, United States Code. The fact that a state National Guard officer is not by the same fact an officer of the United States is made clear by Section 3351 of Title 10, which provides that a National Guard officer cannot be appointed "as a Reserve for service as a member of the Army National Guard of the United States" until after federal recognition has been accorded or the National Guard unit is called to active duty. Further, under the provisions of Section 301, Title 32, United States Code, not even enlisted members of National Guard units are granted automatic federal recognition unless and until called to active duty. In this respect, the case of Maryland, for Use of Levin v. United States, *supra*, 381 U.S. 41, 85 S.Ct. 1293, 14 L. Ed.2d at 208 et seq., is applicable in holding generally that, both in his capacity as an officer of the Maryland Air National Guard and as a civilian caretaker of certain of its property, a Maryland National Guard captain "was an employee of the State of Maryland and not of the United States." *Id.* 381 U.S. at 45, 85 S.Ct. at 1297, 14 L.Ed.2d at 209. In reaching that decision, the Supreme Court reasoned as follows:

"The passage of the National Defense Act of 1916 materially altered the status of the militias by constituting them as the National Guard. Pursuant to power vested in Congress by the Constitution, the Guard was to be uniformed, equipped, and trained in much the same way as the regular army, subject to federal standards and capable of being 'federalized' by units, rather than by drafting individual soldiers. In return, Congress authorized the allocation of federal equipment to the Guard, and provided federal compensation for members of the Guard, supplementing any state emoluments. The Governor, however, remained in

charge of the National Guard of each State except when the Guard was called into active federal service; in most instances the Governor administered the Guard through the State Adjutant General, who was required by the Act to report periodically to the National Guard Bureau, a federal organization, on the guard's reserve status. The basic structure of the 1916 Act has been preserved to the present day." *Id.*

None of the quoted considerations apply exclusively to claims under the Federal Tort Claims Act. They are general principles by which it has been conclusively determined by the United States Supreme Court that a state National Guard officer not on active duty is a state, not a federal, officer. This view is also supported by the statutes relied on by respondent. Johnson v. Powell (C.A.5) 414 F.2d 1060, relied on by respondent for the principle that he is a federal officer, does not support his position. That case did not involve a suit against a National Guard officer, but against the Commanding Officer of Fort Hood, Texas, brought by National Guard members contesting their call to active duty. The case discusses a dual enlistment contract for duty in both the Kentucky National Guard and the National Guard of the United States and the status of the National Guard Unit as part of the Ready Reserve of the Army. But it does not deal with the question of whether a National Guard officer is *ipso facto* a federal officer. Under the applicable statutory and case law cited above, it is apparent that he is not acting as a federal officer until he has been called to active duty.

Because respondent has not clearly stated any facts or law under which he might be considered a federal officer, this case should be remanded to the Circuit Court of Cole County. The rule of strict *construction in favor of state court jurisdiction is followed in this Court. See Young Spring & Wire Corp. v. American Guarantee & L. Ins. Co. (W.D.Mo.) 220 F.Supp. 222; Alexander

v. Missouri-Kansas-Texas R. R. Co. (W. D.Mo.) 221 F.Supp. 897. If this case were permitted to proceed to trial in this Court, the defendant would not be precluded from challenging an unfavorable judgment on appeal by questioning federal jurisdiction in the Court of Appeals. American Fire & Casualty Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702.

It is therefore

Ordered that this cause be, and it is hereby, remanded to the Circuit Court of Cole County.